He's 320-280 Vivian King appellant versus Will County, Illinois at all Apple leaves. Thank you. Good morning. Morning. Good morning. Mr. Toro Laney tour line, tour line, tour line. Would you like to start? Yes, Your Honor. Justice have they turned on the our light our light here for the green light? No, they have not. Um, maybe I can give them a call. Usually turn that on when they start speaking. Okay. Okay. Thank you. You're welcome. May it please the court. Your Honor. My name is Steve tour line. I represent the appellant leaving King in this matter. Your Honor. The trial court erred in dismissing this lawsuit with prejudice on this court should reverse and remand the case. This is a direct taxpayer action that was properly pled. And as the cases in Illinois have have clearly shown that a taxpayer has the right to challenge the unauthorized use of was for an illegal purpose. And that under Illinois law constitutes damage for which a taxpayer may suit. As I said, we have brought this direct taxpayer action against Will County and the defendant H. C. S. C. And there are you ask you something? Grab him out of what you're saying here is it had to do with, uh, insurance for medical bills. Uh, it had to do with the administration of medical bills that are submitted by medical providers on behalf of Will County employees who have gone to see your provider that in your position is they should have been line items. Uh, our position is that the contract between the defendant H. C. S. C. And the county needed to appropriate a specified some or at least for the ability for the taxpayer to determine how much money is being paid to H. C. S. C. Not for insurance, but for the administration of claims. Well, doesn't the administration develop depend on how many claims they they addressed during the year? It could. Yes. But so how do you align out of that in advance? You could, uh, there has to be some way you can prorate or at least, uh, appropriate. Here is what it cost for us to to, uh, to to process a claim. It's $5 or it's $10. Or there's some way to compute so that the county can look back, for instance, if there ever came a time where the county would want to privatize and take its health insurance to Aetna or someone else. Currently, it has no way to be able to determine how much it pays for the legitimate claims for its employees for health care versus how much is it paying to H. C. S. C. Uh, to process claims. Well, but you're asking to be stated. I'm sure they can tell you what they did last year. You want it. You want it prospectively. You want him to line. You wanted in the budget line item for the how much H. C. S. C. Is being compensated for its role, not as an insurer, not as a provider, but simply as the processor of these claims. And what's what's in it for you? In other words, the lawyers. Well, we it's in it for the lawyers because we believe this is a legal use of public Yeah. So how do you get compensated? Because there would be, um, as part of the claim, your honor, uh, what injunctive and declaratory relief against the county that this contract is illegal, void of initio and that it should not continue this practice. Longstanding practice should not continue along with it is an unjust enrichment claim against H. C. S. C. Um, to return the money, the ill gotten money that it has received pursuant to the legal contract. That doesn't answer my question. What's in it for you? Well, we would have a, um, that's a good question. We would have to find, uh, a form. We haven't got that far judge because we're still at the motion dismissal stage, but that there would be some sort of equitable compensation for our bringing this money back into the public fist. Do you have a similar claim in Cook County? Uh, there was a similar. There was another case that was filed in Cook County. The Harper said it was a your law firm. No, no, your honor. Okay, I'm not involved in that case. All right, Mr. Shoreline, do you happen to know why the county didn't file a brief? Are they to this appeal? Uh, no, your honor. I do not know the answer that question. But are they a party to this appeal? I don't know. To be honest, they did not follow an appellate brief. Uh, I don't know the position of the county. Okay, thank you. But we have certainly sued the county, um, seeking injunctive and declaratory relief based upon their what we claim to be a legal, their legal, uh, contract. And as I was saying, there are only three essential elements that we have to show. Mr Charlie, I have a question to what? What is it that which statute or statutory provision or constitutional provision? Do you claim that was violated specifically by the contract that was entered into here in the appropriation that was made? Judge, we Justice Doherty, we have three bases. One is Article eight of the Illinois Constitution. The second is the, um, the Illinois Freedom of Information Act. And then generally, uh, I think it's I think it's not disputed that, like any other state there, the state of the county of Illinois, the county of Will County cannot spend money, public money without an appropriation. And those are the three bases for which we believe this is an illegal act. And as I was saying, there are three elements for purposes of a motion dismissed that we have to plead properly plead, and we believe we pled them one that are that are plaintiff giving King is a taxpayer in Will County to that the defendants will county and H. C. S. C. Entered into this contract without a proper appropriation, which, under Illinois law, would mean that it is void of an issue and as if it never existed. And this king, the plaintiff would be responsible to replenish the public fist because of these illegal payments that have been made by the county, um, to, uh, H. C. S. C. The trial court dismissed. How do you respond to the argument that got raised in the Harper case that was cited here for persuasive purposes to the issue of the real party in interest here being the county on not the single taxpayer because you haven't sufficiently alleged a legally cognizable interest that's affected. Judge, this case is different than the Harper case for a number of reasons. Everyone we have. We have specifically sued a derivative case is a taxpayer case brought on behalf of the count. Um, much like a corporate derivative case. We are. We are affirmatively suing the county for its wrongful conduct in this matter. Right. But in the Harper case, the identical allegation was made that they had taxpayers standing because of the general allegation that they had to replenish the general revenue with their tax dollars. That's the same allegation that you're making here. There they found that that wasn't sufficient and it's not a legally cognizable interest. Judge, I think the distinction, Justice Norton, I think the distinction there is in the Harper case, there was no injunctive or declaratory relief sought against the county, which is what that's true, which is going to be a real party in interest in the deck action or in the injunction. You have to have a legally cognizant of all interest. Do you not? I completely agree. And that's we where a similar allegation that there was, uh, the taxpayer was responsible for the ill gotten or the illegal payments made to the board member. And that's what we've done. And again, we're at a motion to dismiss stage. Uh, if more information or more allegation, uh, we at a minimum would prefer to have the ability to to amend. But we know we have alleged that, um, the county and H. C. S. E. Have entered into what we have alleged to be an illegal contract because there is no proper appropriation for the administration of these claims. H. C. S. E. Is making billions of dollars. Um, and the county, for whatever reason, is turning its turning its back to it. We have alleged that that is a legal contract. And as a result, the money needs to be brought back to the fist and all that. And to this point, all that what that those illegal payments have had to been replenished and paid for by clients or taxpayers like my client being king. And what's your basis for saying what you just said that they're making all this money? How your basis for that? The basis was in their, uh, the, uh, the public reports that H. C. S. E. Has has published to the insurance commissioner. And, uh, and the payments to them are illegal for exactly what reason? Because there was no one knows other than H. C. S. E. How it how it determines the amount of money that is being paid to it by the county for the administration of these claims versus how much the county is actually paying to the health care providers, the doctors, the hospitals for the care and treatment of their employees. So under the contract, is there a service fee that's paid by the county to H. C. S. C. There is. Well, they have the contract provides that they will this that they will accept. H. C. S. E. Will be able to retain the amounts of money that it has received from the county in excess of what the health care providers are basis for compensation. There is not a flat service fee. So there's also, I believe, a small with each fee with each with each claim that is that is submitted. There's also an administrative fee that goes with that. Okay. Thank you. You're welcome. But the important thing to understand about this is the way the situation arises. H. C. S. C. Is not insured. It's not a and, um, as the administrator goes to these health care providers and says, look, we will. We can bring to you hundreds and thousands of Will County employees as potential patients as customers. To do that provider, you're going to need to take a discount for us to give you access to that market. The providers do that, that whatever that discount is is not disclosed to the county. It's not disclosed to the to the taxpayers. So when a Will County employee goes to see his his or her doctor and that visit generates $100 bill for $100 invoice, that bill is sent to H. C. S. C. For for initial payment because it has worked out a secret and unknown discount with that H. C. S. C. Will pay that provider something less, say $50 in full in full satisfaction of the visit. H. C. S. C. Then turns and sends the the original bill to Will County for full payment for $100. Will County makes that payment and nowhere is it disclosed how much the discount is number one or what H. C. S. C. Attempts to use as a as its explanation or justification for this is that well we use we average we come up with what's called an A. D. P. An average discount price which is to substitute for what the actual discount is. And uh the problem with that is number one, no one knows how it's calculated, not the county uh and certainly not uh the taxpayers. Uh And number two, as I it's supposed to be a reasonable substitution for uh the actual discount. Well that discount should be the discount should should flow back to the to the to the uh to the taxpayers because what will county is will county is bringing these uh potential patients to the providers. It's not H. C. S. C. They're just using the market to to to get discounts and then retain uh that compensation, that difference in what was billed versus what was paid and that amount is uh again supposed to be a reasonable substitution. And as you know, as I mentioned before, uh based upon what we have seen from in public filings in for instance, 2018, their net income was $4.1 billion and we believe that per se is cannot be considered to be reasonable. Was that net income all from will county? No, Judge Justice Schmidt, I do not believe it's all from will county. Well then who cares what their net income is okay to make money. It is as long as they disclose how how it's done, especially when we're dealing with public finances. You know, let me ask you another question. You asked to talk about how this case arises. What's your law firm's connection with this plaintiff? In other words, did she come into your office complaining of this horrible wrong or did some lawyers in your office come up with this and go find a plaintiff? Well, Judge, I don't know. I entered my appearance after this lawsuit was filed. I don't know the situation or how it was that uh Miss King uh came to file this lawsuit. All right. But as I mentioned, Judge, this is your line. I'm sorry. Your time is up. Thank you very much. Okay. Um Ms. Wit Yes. Thank you, Your Honor. My name is Helen Witt and I represent the Appellee Healthcare Service Corporation, which does business in the state of Illinois as Blue Cross Blue Shield of Illinois. The circuit court properly dismissed plaintiff's second amended complaint. And it's important to note that this was plaintiff's third complaint filed in the circuit court because it found correctly that the claims are derivative and they are not direct taxpayer claims for a number of reasons. The deficiencies in a complaint with respect to trying to state a direct taxpayer claim are both pleading deficiencies and legal deficiencies. And she simply failed to meet the requirements of a taxpayer action. Now, plaintiff said in her reply brief and said again this morning that there were unauthorized actions and misappropriations of funds by Will County and that those are the heart of the matter, which is why they've characterized this as a direct taxpayer action. But that contention is not supported by the actual allegations of the second amended complaint and don't support the elements that the Supreme Court has set out as a requirement. The beginning, the middle and the end of the inquiry here about whether there has been a direct taxpayer action state, it has to start with the material allegations, the well pled material allegations of the complaint and a determination of both the true party and interest on the claims and the nature of the wrong that is alleged. So I'm going to talk about three specific problems with the complaint. First, there is no sufficient legal or allegation that Will County took illegal action and misappropriated money belonging to taxpayers. There are no well pled allegations in the complaint that support that conclusion. Second and relatedly, the real party and interest in the claims is Will County so that the case is derivative, not direct. What the plaintiff seeks, as council indicated this morning, is a effectively a repayment by H. C. S. C. Of the monies that were paid by Will County under what the plaintiff claims is an illegal contract. And to the extent H. C. S. C. Would be required to disgorge improperly gained money. The beneficiary of that disgorgement would be Will County. It's the real party and interest. Do you know Will County didn't appear or follow brief Justice McDade? I do not. Will County participated at the circuit court level, but I do not know why they did not submit a brief in this case. Thank you. Finally, and following from the 1st to there is no sufficient allegation in the second amended complaint that plaintiff had any direct injury or individual liability to pursue these claims for rest. Institutionary relief on her own behalf and for taxpayers. It is exactly as Justice Schmidt indicated earlier, like the Harper case in that sense. So I will address each of these these defects and then briefly at the end. To the extent I still have time, I will address that the new claims that plaintiff has raised here, which relate to the county's code, which I will simply point out now, in case I run out of time, are not included in the complaint at all. There is no reference to the county's code or to the claim that a line item for health insurance benefits is insufficient to cover administrative services related to health insurance benefits. None of that appears in the second amended complaint. So, with respect to what is really the fundamental deficiency in the complaint, which is the failure to allege any illegal or unauthorized tax by Will County, the Supreme Court has made clear in the long line of Supreme Court cases dealing with direct taxpayer actions reaffirmed in the Sikiti versus UBS case in 20 2005 that the essence of a taxpayer action is that it seeks relief from illegal or unauthorized acts of public bodies or public officials. Now, of course, Illinois is a fact bleeding jurisdiction, so that allegation must be supported by actual facts, sufficiently pled facts, not just the statement that that is the case, which is what we submit. We find in the second amended complaint in the Lions v Ryan case, which we also cite in our brief. The court also made clear that public officials are presumed to perform their public duties according to law. So with that background and looking at the allegations of the complaint, we find that there are 14 paragraphs in the second amended complaint in the category of facts that the plaintiff says are common to all of her counts. The 1st 11 of those paragraphs, which started paragraph four of the second that violates Illinois law. And this is significant that misleads will county. So there's there's 14 paragraphs saying this is what HCS he does. It's defrauding the county. It's misleading. It files or submits false billing reports. 14 paragraphs that never mentioned will county in paragraph 15 at C. 104 is the very first place where there is even a obligated in any wrongdoing. And there they simply say that H. C. S. C. And will county must comport with what the Illinois courts have described as the prior appropriations rule. That rule requires that the amount a unit of local government intends to pay a private vendor under a contract must fix the amount and method of calculation to be paid to the vendor. That statement is repeated in another place, and that is really the extent of the allegations about the wrongdoing from will county. And there's no support legally for that statement. There's a reference to a prior appropriations rule, but there isn't any description of where that prior appropriations rule comes from. It clearly isn't in the Constitution. It isn't in the Freedom of Information Act. It isn't in the Local Records Act, which is the actual statute, not for you that is cited in the Second Amendment complaint, and there's no reference to any other statutes in the complaint. So there there simply is not a sufficient basis legally or factually for the contention that will county engaged in illegal or unauthorized X. Now the complaint does include that conclusion in a number of places. There are repeated statements to the effect of will county knowingly and wrongfully entered into a contract that is in derogation of Illinois law. But again, there's there's no factual or legal support for any of those allegations. Now, this is significant in addition to the to the pleading issues because of the failure to support the contention that this is a direct taxpayer action based on misconduct by will county or its officials because of the absence of any basis for the illegality of the contracts. Even I would submit in the answers to two questions so far this morning. First of all, we cited the provision of Article eight, Section one of the Illinois Constitution in its entirety in our brief, and there is nothing in that provision that relates it all to the legal theories. It simply says that Illinois units of government must comply with the laws that are set out for appropriations and for entering into contracts. But it doesn't itself create any obligations so that there there would have to be some allegation that that constitutional provision was violated because will county failed to comply with some law or regulation, and that is missing from the complaint. Secondly, there is reference in the at no explanation of how a violation of the Local Records Act would make a $28 million contract void ab initio, and there was no development of that point in the briefs that were filed here on behalf of the appellant. So what we're left with as the legal support for this claim, then, is this referenced prior appropriations rule, which again is not defined, is not tied to a statute or some other obligation, and we submit is simply not sufficient to meet the requirements and the pleading burden that a plaintiff seeking to void a contract based on a violation of a statute and based on the claim that will county effectively misspent public money. There has to be something to tie the allegations to a violation of law, and there simply isn't. The argument that the plaintiff makes with respect to the fact that the contract itself is a violation of this prior appropriations rule because the county and the taxpayers can't know what H. C. S. C. Ends up making as a profit on this contract finds no support at all in Illinois law and the Harper recent Harper case by the first district makes that point as well that there is no private vendor to disclose its profits on a contract. There are there's simply no obligation, and that isn't part of an appropriation. An example, I think, makes this point, and I can use the same numbers that the appellant used. If a vendor sells something to will county for $100 $100 for a bushel of widgets, and it turns out that that vendor can buy those widgets from its supplier for $75. The fact that nobody knows and it isn't in the contract how much the vendor is paying for those widgets doesn't make the contract a failure in terms of appropriation or any other legal requirements. It is a completely separate element. As long as the taxpayers know and in in in terms of both the appropriations and in the public nature of the contract, they know exactly in the line item budget what will county is spending for health insurance benefits. As long as the widget contract makes clear that that the county is paying $100 for widgets. The fact that the vendor pays something else for those widgets is completely irrelevant under any of the legal theories here with respect to the, uh, the taxpayer standing argument. The argument is very similar. It is absolutely the case that the complaint repeatedly makes the conclusory statement that plaintiff is a taxpayer and that as a taxpayer, she is harmed by this contract. But there are no well led facts that support that no indication of how this plaintiff has standing because of an actual injury. In fact, to her, that is sufficient to justify standing. And it is identical again to the decision in the Harper case, where the taxpayer simply alleged that she was a taxpayer and the taxpayers had been injured without any support for that. But the court found to be insufficient. If she made an allegation that there is information that is public, that, um, the state or the county has a budget deficit, is that adequate? Unlikely in this situation, Justice McDade for two reasons. One because there would also have to then be explanation and a description that would show an imminent injury and a likely injury sufficient for standing, but also would have to effectively rule out any other way to fill in that budget deficit. So in other words, if the budget deficit was going to be filled in by a gasoline tax as opposed to, say, a property tax, and we don't know which will county taxes this taxpayer claims to pay, we there is no allegation that she's a property owner. It's simply that she pays taxes in Will County. So there would there would have to be more to actually tie the circumstances and the allegation to an injury. In fact, that would be either specific to in this case, Miss King or to Will County taxpayers as a whole. So what you're positing, it seems to me as a situation where you can't make an adequate allegation without discovery. No, not necessarily, because there certainly have been cases where a taxpayer was deemed to have sufficiently showed that with respect to a specific misuse of funds that was funded by a specific type of either government or a particular tax that is tied to that misuse, you could. But the courts have been pretty clear to say this. This is a narrow doctrine that the the doctrine of taxpayer direct actions doesn't just open the courts to a complaint for misspending by any taxpayer, simply because the source of the money is is is taxpayer information. And the final point I will make is that with respect to the VZ case that the appellant indicated was the basis and supported their position, the VZ case actually said there there were only conclusory allegations of standing of exactly this type. And the case was remanded in order to give the taxpayer in that situation an opportunity to show that there could be those allegations. But the appellate court in the VZ case actually concluded that there were insufficient allegations of standing. But I've got a question for Miss Whit. Uh, Miss Whit, do you, uh, think that the analysis for taxpayer standing, uh, is the same whether or not they're seeking monetary recovery or equitable relief? In other words, here, they're the same in your opinion. In this case, it is. It wouldn't necessarily be. There could certainly be cases where there were only claims that didn't include monetary relief, where there could be a different analysis. But here, the the, uh, the injunction claim really is no different than the claim that they want the money repaid by H. C. S. C. It's not really a distinct claim, and the claim for a deck action is based on the claim that there that the contract is erroneous or is illegal and void of an issue with the remedy for that declaration to be the restitution air relief that they seek in the other count. So in this particular case, the analysis is the same. Thank you. Are there any further questions for Miss Whit? No. Thank you very much. Thanks. The court. Mr. Tour line. Any rebuttal? Yes. Briefly, Your Honor. We just heard an analogy that was brought up also the trial court that well, if a vendor if the county had went out and hired and bought $100 worth of widgets from a vendor, then it shouldn't. And as long as that was appropriated, the county shouldn't get into the business of how much profit or money the vendor was making. And we completely agree in this situation. The vendor are the health care providers, the doctors, the hospitals that are providing care to the county employees. H. C. S. C. Is our agent is the county's agent. It's the one who is administrating these claims. It's not a vendor. If you take that, if you take that analogy and and actually apply it to this set of facts, it would be the it would be a situation where a buyer's agent went to a vendor and said, Hey, I can bring to you a county and you can sell all the widgets you want to the county. But I want you behind the scenes to split with me. Um, your profit. If you do that, if you split your profit with me, I'll bring this. I'll bring this county to your to you as a as a customer. That's the situation we're dealing with. H. C. S. Well, let me ask you this. So what if if the county would not only go to this vendor, but this middleman, but go to somebody else and put out these widgets for a bid. But this person says, I'll get you the widgets and at this price, how much that person makes that middleman makes is irrelevant, isn't it? And let me give an example. Uh, not exactly like yours, but the county wants to do a roadway. So they put out, they got a higher road it out for bids. And, uh, so one person gives a bit of X dollars. Another person gives a bit of two X. But the one make an X with the X dollar bid, the guy likes to make more profit because he's already got the Caterpillar D elevens and things like that. The guy that bids two X in order to complete their contracts is gonna go out and have to buy earth moving equipment. So it turns out his profit margin is actually less than the guy who bids last. So, so should the county take the two X bid because the person isn't making as much profit? No, Justice Schmidt. And that again, I think exemplifies our point. If the in your, in your analogy, it was roadway in our, in our reality, it's health care services, the provision of providing for the account, the county employees, their health care needs. If we could have an apples to apples comparison, here is what these providers are charging and what they are accepting as payment, then the county can make an informed decision and the isn't the only show in town. They're not the only people that administer these health health care claims for government entities. Isn't that right? I believe that's correct. Yes. And so the county can go to a different health care people and and seek bids. So who will do it? And what kind of contract can we get with you? And apparently they got assuming they dealt with other vendors such as Blue Cross Blue Shield. How much Blue Cross Blue Shield made in the in the process seems to be totally irrelevant. Again, Blue Cross Blue Shield is not going to administer those claims and go out and make deals with each of these health care providers for free. Justice Schmidt, we we don't disagree that there is, uh, no one is saying that they cannot and should not do this, uh, as a as a business opportunity. But what our theory and our argument is that to do that when you're dealing with a public public entity, you have to tell the public entity here is what it's costing. Here is what it costs to provide for the provision of health care for our employees. That's X. Here is what we're going to charge you as your third party administrator as your agent so that you can decide whether or you want to continue as a self insured, uh, uh, health health insurer or why does why is the road contractor doesn't have to when he makes a bid, doesn't have to tell the county what it's going to cost him to build the road. Uh, he only saying here's what I'm gonna charge you. Justice. My time is up. But may I answer? Yeah, sure. Um, because in your contractor is the vendor just like the health care providers, not not the agent. Well, maybe that maybe the road, maybe the road contractor is going to subcontract the whole job. Uh, maybe he's going to go out and hire subcontractors do it all and he's never even gonna set foot on the site. That could be. But that road contractor is not the county's agent. Well, he sure is. If he's contracted with them to build the road, he's sure their agent, but he's not the person in your scenario. He would not be the person in this, taking that situation, your analogy and putting it H. C. S. C. In its place, the county would have hired H. C. S. C. Go find us the best contractors you can find, uh, to rebuild the roads and will county and then we'll you can administer those and we will pay you to do that versus the road and the road contractor then works with H. C. S. C. And says, well, listen, we'll build this road because you got us will county as a as a, uh, client. We wrote paver will only charge you. Uh, H. C. S. C. 50% of of what we would otherwise build a county. And then you H. C. S. You can keep that money as long as we get the projects from will count. That's that's the analogy. All right. Thank you. Thank you. Okay. We thank both of you for your arguments this morning. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will now stand in brief recess until 1 30.